UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENJAMIN FRANKLIN FRANCHISING,
LLC,

    Plaintiff,

v.                                                          Case No: 8:14-cv-1209-T-30AEP

ON TIME PLUMBERS, INC.,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon the Defendant's Motion to Dismiss or Transfer and Incorporated Memorandum of Law (Dkt. 8) (the "Motion"), Plaintiff's Response in Opposition (Dkt. 14), Defendant's Reply (Dkt. 17), and Plaintiff's Surreply (Dkt. 20). Upon review and consideration, it is the Court's conclusion that the Motion should be denied.

## BACKGROUND

This is an action for a declaratory relief brought by Plaintiff Benjamin Franklin Franchising, LLC ("BFF"), pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. BFF seeks relief against Defendant On Time Plumbers, Inc. ("OTP"). Specifically, BFF requests a declaration stating that (1) BFF may terminate a franchise agreement between BFF and OTP (the "Franchise Agreement") for OTP's failure to open and operate the franchise; (2) BFF has no obligation to consent to the transfer of the Franchise Agreement because OTP is in default of the Franchise Agreement; and (3) BFF

may properly refuse to consent to a proposed transfer that does not include a general release in a form satisfactory to BFF.

BFF is a franchisor in the business of licensing and franchising its business format and system and related standards, specifications and procedures using the name and service mark "Benjamin Franklin Plumbing®" and associated marks and logos for the operation of residential plumbing services businesses. On or about February 8, 2013, BFF and OTP entered into a Franchise Agreement in which OTP agreed to open and operate a Benjamin Franklin Plumbing franchise in the territory in and around Las Vegas, Nevada (the "Nevada Franchise"). George Donaldson ("Donaldson"), executed the Franchise Agreement as President of OTP. OTP did not open or operate the franchise.

In or about June 2013, a dispute arose between Donaldson and Clockwork, Inc. ("Clockwork"), the parent company of BFF, regarding several businesses owned by Donaldson that operated Clockwork franchises. Donaldson, Clockwork, and their counsel engaged in negotiations and formal mediation in order to end their franchisor/franchisee relationship with respect certain Arizona and California businesses owned by Donaldson. On or about October 25, 2013, Clockwork entered into a letter of intent ("LOI") regarding Clockwork's acquisition of certain assets of several businesses owned and operated by Donaldson. The LOI described Clockwork's potential purchase of Donaldson's Arizona and California franchises as "Proposed Transactions" and provided that Clockwork could terminate the LOI if the parties were unable to enter into a definitive purchase agreement by December 16, 2013. However, the LOI specifically provided that certain "Binding Provisions…shall survive the termination of [the LOI]." (Dkt. 8-2 at 117). The LOI

included a binding provision entitled "Further Understandings" that specifically referenced the Nevada Franchise:

> Separate from the Proposed Transactions, the parties acknowledge the franchise agreement existing between Buyer's franchisor affiliates and Seller's affiliate located in Nevada. The parties agree to work together to Transfer the Nevada franchise Territory.

(Dkt. 8-2 at 122). In December 2013, Clockwork informed Donaldson that it would not be entering into a purchase agreement for the Proposed Transactions. Donaldson began de-branding his Arizona and California businesses, and on January 31, 2014, these businesses began operating under the name "Rightime Home Services", thereby becoming competitors of Clockwork franchises. On the same day, Donaldson filed an action in the Central District of California entitled *VenVest Ballard Inc., et al. v. Clockwork, Inc., et al.*, Civ. No. 5:14-cv-00195-MWF (Ex) (the "California Action"). The Complaint in California Action sought declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that Donaldson's businesses were not bound by the non-competition clauses in the LOI and that Donaldson's businesses' new mark did not infringe on Clockwork's trademark rights. The original complaint in the California Action named only Clockwork and Clockwork IP, LLC as defendants.

In February 2014, Clockwork and OTP's counsel engaged in several communications regarding the transfer of the Nevada Franchise. On March 14, 2014, Clockwork filed its answer, affirmative defenses and counterclaims in the California Action. During the months of April and May, 2014, BFF and OTP's counsel exchanged numerous communications regarding the transfer of the Nevada Franchise. Certain of these communications discussed both the California Action and the transfer of the Nevada

3

Franchise simultaneously. On May 20, 2014, BFF sent OTP a notice of intent to terminate regarding the Nevada Franchise.

On May 21, 2014, BFF filed the instant action. On June 27, 2014, OTP filed the instant motion to dismiss or transfer. On July 7, 2014, a First Amended Complaint was filed in the California Action, adding OTP as a plaintiff and BFF as a defendant. The First Amended Complaint includes claims against BFF for breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with contractual relations, intentional interference with prospective economic advantage, and unfair competition.

## DISCUSSION

OTP's Motion argues for dismissal of this case based on grounds of the first-filed rule, or, alternatively on grounds of improper venue. The Motion also argues that the this action should be dismissed or transferred to the Central District of California pursuant to the doctrine of forum non conveniens and 28 U.S.C. § 1404(a) ("§ 1404(a)"). OTP argues the instant action's parties and issues overlap with those of the California Action; therefore, dismissal or transfer is appropriate under the first-filed rule. OTP also argues that venue is improper because the Franchise Agreement is no longer the controlling agreement between the parties and cannot form a basis for venue. Alternatively, OTP argues the case should be transferred of dismissed pursuant to § 1404(a) and the doctrine of *forum nonconveniens* because the Central District of California is an adequate alternative forum, judicial economy will be encouraged by transferring, and the events that gave rise to the action occurred in the Central District of California.

4

BFF asserts that the Franchise Agreement is the only valid contract in the instant case. The Franchise Agreement, BFF argues, contains a mandatory forum-selection clause that "trumps" the first-filed rule. BFF asserts that the LOI is inapposite, stating that it does not operate as a novation or amendment of the Franchise Agreement. BFF also argues that the California Action is not sufficiently similar to the instant action to warrant transfer under the first-filed rule. In support of this argument, BFF notes that it was not a party to the California Action at the time of the filing of the instant case and that it is not currently a proper party to the California Action as it was not party to the LOI. BFF asserts that the tort claims against BFF in the California Action relate to the Franchise Agreement and should have been brought as counterclaims in the instant case.

**I. Venue**

OTP asserts that the Franchise Agreement is no longer the operative agreement because the parties "resolved their dispute by way of the binding 10/25/13 LOI". (Dkt. 8, p. 8). On this basis, OTP argues the forum-selection clause contained in the Franchise Agreement is not enforceable and that venue is not proper in this district under 28 U.S.C. § 1391. BFF asserts that the Franchise Agreement is the operative document and its forum-selection clause is both mandatory and enforceable. BFF argues that venue is proper under 28 U.S.C. § 1391 because OTP, as a corporate defendant, is deemed to reside in this district as OTP is subject to the Court's personal jurisdiction with respect to this action.

OTP's argument that the LOI, and not the Franchise Agreement, is the controlling agreement is unavailing. As an initial matter, neither BFF nor OTP are party to the LOI.

5

Next, while the LOI contains an agreement BFF and OTP should "work together to Transfer the Nevada franchise Territory," this provision does not purport to modify or extinguish the Franchise Agreement.  The Franchise Agreement explicitly requires that "[n]o change, modification, amendment or waiver of any of the provisions hereof shall be effective and binding on either party unless it is in writing, specifically identified as an amendment and signed by the party to be charged."  (Dkt. 1, Ex. A).  The LOI does not satisfy any of these conditions.  Because the Franchise Agreement created a specific amendment procedure, the parties were required to adhere to this procedure in order to create an enforceable amendment to the Franchise Agreement.  *Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1283 (11th Cir. 2003) ("Having created a particular [amendment] procedure, it seems evident to us that the parties to the agreement must follow that procedure in order to create enforceable amendments to their contract.").  Because the LOI did not include either party to the Franchise Agreement and failed to adhere to the amendment procedure specified therein, the LOI is not an enforceable amendment or modification of the Franchise Agreement.  Therefore, venue is properly analyzed in the context of the Franchise Agreement.

The Franchise Agreement contains a forum-selection clause in which the parties agreed that

> the United States District Court for the county and state where Ben Franklin has its principal place of business at the time the action is commenced shall be the venue and exclusive forum in which to adjudicate any case or controversy arising from or relating to [the Franchise Agreement].

(Dkt. 1-1, § 18.3).  BFF has shown that its principal place of business was located in this district at the commencement of this action.  The Court concludes that the forum-selection

clause contained in the Franchise Agreement is mandatory, as it "dictates an exclusive forum for litigation under the contract." *See Global Satellite Commc'n Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir.2004) (quoting *Snapper, Inc. v. Redan,* 171 F.3d 1249, 1262 n. 24 (11th Cir.1999)). Forum-selection clauses are presumptively valid and enforceable "unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir.2009). A forum-selection clause is invalidated only when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* (citing *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1290–91 (11th Cir.1998)).

In the instant case, OTP argues that the Central District of California is a more convenient forum and will conserve judicial resources. OTP also argues that litigating in this district would be inconvenient and expensive for OTP. These factors do not rise to the level of the "strong showing" required to invalidate the forum-selection clause. *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1331 (11th Cir. 2011) (holding that arguments regarding the maintenance of parallel proceedings were not sufficient to establish the "strong showing" of unenforceability required to overcome the presumption that a forum-selection clause is valid and enforceable.) Thus, the forum-selection clause is presumptively valid.

Next, the Court must analyze venue under 28 U.S.C. § 1391. 28 U.S.C. § 1391(b)(1) states that venue is proper in a judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located." For venue purposes, a defendant entity shall be deemed to reside, "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…." 28 U.S.C. § 1391(c)(2). Accordingly, the Court must determine whether it may exercise personal jurisdiction over OTP in the instant action.

In determining personal jurisdiction, the Court normally must analyze whether OTP has sufficient minimum contacts with the state of Florida to satisfy the Due Process Clause of the United States Constitution. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). However, the Supreme Court has held that where a forum-selection clause exists that is "freely negotiated" and is not "unreasonable and unjust" the minimum contacts standard is met. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S. Ct. 2174, 85 L. Ed.2d 528 (1985) (citing *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed.2d 513 (1972)). In order for a forum-selection clause to be unreasonable and unjust, the moving party must show that the contractual forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *The Bremen,* 407 U.S. at 18.

Here, OTP does not argue that the forum-selection clause was not freely negotiated, nor does it argue that it is unreasonable, or unjust. Further, any inconveniences presented to OTP, as discussed above, are not of a sufficient level to render the forum-selection clause

unreasonable and unjust. Accordingly, it is the Court's conclusion that OTP is subject to the Court's personal jurisdiction; therefore venue is proper in this judicial district.

## II. The First-Filed Rule

OTP maintains that if this district is a proper venue, the instant action should still be dismissed pursuant to the "first-filed rule". The Eleventh Circuit has recognized the first-filed rule as "well established", stating that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted). A party objecting to jurisdiction in the first-filed forum carries the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule. *Id.*

The first-filed rule serves dual purposes; first, it determines which court may decide the merits of substantially similar issues, and second, it establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated. *See AAMP of Florida, Inc. v. Audionics Sys., Inc.*, 8:12-CV-2922-T-33TGW, 2013 WL 1104889, at *2 (M.D. Fla. Mar. 18, 2013) (citing *Marietta Drapery & Window Coverings Co., Inc. v. N. River Ins. Co.,* 486 F.Supp.2d 1366, 1369 (N.D. Ga. 2007)). The court in the second-filed action should determine the likelihood of substantial overlap. *See Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir.1971)) (internal citations omitted).[1] If the Court finds "likelihood of substantial overlap between the two suits, it is no longer

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

9

up to the court in the second-filed suit to resolve the question of whether both should be allowed to proceed." *Id.* Therefore, it is appropriate for the Court to first analyze the likelihood of substantial overlap between the instant action and the California Action.

In determining whether a case should be dismissed on grounds of the first-filed rule, the Court should consider the following factors: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues. *See Rudolph and Me, Inc. v. Ornament Cent., LLC.*, 8:11-CV-670-T-33EAJ, 2011 WL 3919711 *2 (M.D. Fla. Sept. 7, 2011) (citations omitted); *see also Groom v. Bank of Am.,* 2010 WL 627564, at *9 (M.D. Fla. 2010) (citing *Actsoft, Inc. v. Alcohol Monitoring Sys., Inc.,* 2008 WL 2266254, at *1 (M.D. Fla. 2008)). The Court has explained, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *See Rudolph and Me, Inc.*, 2011 WL 3919711 *2 (citations omitted).

Here, the subject matter of the instant case and the California Action are separate and distinct. The California Action initially stemmed from a dispute regarding the LOI, to which neither BFF or OTP was a party. As previously discussed, BFF and OTP were not parties to the LOI, and the LOI did not amend or modify the Franchise Agreement. Moreover, the reference to "work[ing] to Transfer the Nevada franchise" in the LOI was included as a "Binding Provision" that "shall survive the termination of [the LOI]." The provision's survival of the termination of the LOI indicates that the LOI was not meant to amend the Franchise Agreement, but merely was a separate "understanding" between

separate parties than those in the Franchise Agreement. Further, at the time this action was filed, neither BFF or OTP were named as parties in the California Action, nor did the California Action contain any claims relating to the Franchise Agreement or the Nevada Franchise.

The "first-filed rule" directs the court that first has jurisdiction to hear a case when parties have filed competing complaints in separate courts. *See Allstate Ins. Co. v. Clohessy,* 9 F.Supp.2d 1314, 1316 (M.D. Fla. 1998). Here, it is clear that at the time the instant case was filed, the complaint in the California Action did not overlap with this subject matter contained in the instant case; therefore at the commencement of the instant action, the complaint in the California Action was not a "competing complaint". Because the Court, in its discretion, must balance the principals of conserving judicial resources and avoiding conflicting rulings, along with questions of federalism, in determining whether to retain jurisdiction in a declaratory judgment action, it does not follow that the first-filed rule would control in this instance.

### III. *Forum Non Conveniens* and § 1404(a)

Finally, OTP argues that this case should be dismissed or transferred under the doctrine of *forum non conveniens* or § 1404(a). Where, as here, an agreement contains a mandatory forum-selection clause, the Court must use the same balancing-of-interests standard employed to resolve a motion to transfer under § 1404(a). *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.,* ⎯⎯ U.S. ⎯⎯, 134 S. Ct. 568, 580, 187 L. Ed.2d 487. In the context of a mandatory forum-selection clause, however, the Court should not consider arguments about the parties' private interests, but may

11

consider arguments about public-interest factors only. *Id*. at 581-82. Such public interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n. 6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). As the Supreme Court has instructed, because public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 582.

OTP argues that judicial economy, avoidance of duplication of proceedings, and avoidance of inconsistent rulings support transfer or dismissal. While these public interest factors must be considered, the factors presented by OTP do not demonstrate that the burden on the court system in maintaining this action along with the California Action would be so great as to constitute "unusual" or "extraordinary" circumstances as envisioned by the Supreme Court in *Atlantic Marine*. *Id.; see also PNC Bank, N.A. v. Akshar Petroleum, Inc.*, 3:13-CV-436-J-34PDB, 2014 WL 1230689 at *7 (M.D. Fla. Mar. 25, 2014). Therefore, the Court concludes that OTP's argument for transfer or dismissal based on *forum non conveniens* or § 1404(a) is not sufficient to warrant transfer or dismissal.

### IV. Conclusion

Based on the foregoing, it is the Court's conclusion that OTP's motion to dismiss should be denied. It is therefore

ORDERED AND ADJUDGED that:

1. The Defendant's Motion to Dismiss or Transfer and Incorporated Memorandum of Law (Dkt. 8) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of September, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-1209 mtd.docx